**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 08-cv-01533-CMA-CBS

LUKAS MYERS, and
HOWARD MYERS, individually and as father and
next friend of ETHAN MYERS,

       Plaintiffs,

v.

HEALTHMARKETS, INC.,
CORNERSTONE AMERICA, and
STEVE KIRSCH,

       Defendants.

---

**ORDER ON PLAINTIFFS' MOTION TO REMAND TO STATE COURT**

---

       This matter is before the Court on Plaintiffs' Motion to Remand to State Court.
(Doc. # 14).  For the following reasons, the Motion is GRANTED.

## INTRODUCTION

       In June 2008, Plaintiffs filed a complaint against Defendants HealthMarkets, Inc.
("HealthMarkets"), Cornerstone America ("Cornerstone"), and Steve Kirsch ("Kirsch")
in state court in Arapahoe County, Colorado.  *See* Doc. # 1, Ex. 1.  HealthMarkets
removed the case to this Court on the basis of diversity jurisdiction.  *See* Doc. # 1.
Shortly thereafter, Plaintiffs filed the present motion to remand, arguing that one of the
Defendants – Kirsch – is not a diverse party, and therefore federal jurisdiction is lacking.
*See* Doc. # 14.  HealthMarkets concedes that Kirsch is not diverse from Plaintiffs, but
contends that Kirsch is not a proper party to this lawsuit and thus that, under the

doctrine of fraudulent joinder, he must be disregarded for jurisdictional purposes. *See* Docs. # 1, 17.  Plaintiffs' motion is fully briefed and ripe for decision.

## BACKGROUND

HealthMarkets, through various divisions, affiliates, and subsidiaries, including Cornerstone, sells insurance products.  According to the complaint, on January 15, 2002, Plaintiff Howard Myers applied for health insurance through Kenneth Kochan, a sales agent of one of HealthMarket's subsidiaries.  *See* Doc. # 1, Ex. 1, ¶ 12.  Plaintiffs contend that Mr. Kochan falsely represented that the application had been accepted, causing them to believe that they were insured as of January 15, 2002.  *See id.,* ¶¶ 20, 30.  A week after the application, Plaintiffs Ethan and Lukas Myers were seriously injured in a car accident, which resulted in substantial medical expenses.  *See id.,* ¶¶ 32-33.  It was not until after this accident that Plaintiffs were informed that the application was being denied.  *See id.,* ¶¶ 40-42.

In January 2004, Plaintiffs filed a lawsuit against Mr. Kochan and two of HealthMarkets' subsidiaries, The Alliance for Affordable Health Services and The Mid-West Life Insurance Company of Tennessee, seeking damages based on the allegedly fraudulent representations regarding the status of their insurance coverage.  *See id.,* ¶¶ 6, 44.  None of these parties are named in the present lawsuit.  In their answer to the complaint in the prior litigation, the defendants asserted, among other affirmative defenses, that Plaintiffs' claims were barred by "the terms of the insurance contract which Plaintiffs claim was or should have been in effect."  *See* Doc. # 17 at 4.  However, Plaintiffs did not receive a copy of such a policy until September 2007, and apparently then only in response to Plaintiffs' threats to seek sanctions.  *See* Doc. 14 at 3.  Upon review of the policy, Plaintiffs discovered that it provided very little in the way of health

benefits, despite Mr. Kochan's representations that the policy was for full medical and hospitalization coverage and was similar to the highest level coverage offered by other well-known insurers.  *See* Doc. # 1, Ex. 1, ¶¶ 17, 51.

Following the disclosure of the policy, Plaintiffs moved to amend their complaint to add claims relating to the defendants' sale of these so-called "junk" insurance policies.  *See* Doc. # 17, Ex. 2.  That motion was denied on the grounds that the proposed amendment was untimely and would have prejudiced the defendants.  *See id.*  Specifically, the court found that Plaintiffs were on notice of the defendants theory that the policy would not have covered Plaintiffs' injuries since early 2004, when the defendants answered the complaint and articulated their affirmative defenses.  *See id.* at 5.  The court further noted that the proposed amendment "would inject an entirely new theory of recovery predicated on entirely new factual allegations into the case." *See id.* at 6.

Shortly after the denial of their motion to amend, Plaintiffs instituted the present suit.  The complaint, filed in state court, reiterated the background facts relating to Mr. Kochan's alleged misrepresentations, but focused on the fraudulent scheme to sell "junk" policies perpetrated by HealthMarkets, Cornerstone, and Kirsch, who allegedly is responsible for training insurance agents in Colorado.  *See* Doc. 1, Ex. 1.  The complaint specifically averred that, because both Plaintiffs and Kirsch are residents of Colorado, federal diversity jurisdiction over the case does not exist.  *See id.,* ¶ 8.

Nevertheless, HealthMarkets removed the case to this Court on July 22, 2008. *See* Doc. # 1.  Conceding that Kirsch would normally destroy diversity jurisdiction, HealthMarkets argues that Kirsch's citizenship should be disregarded under the doctrine of fraudulent joinder, which provides that where a non-diverse defendant has been

3

improperly added to a suit, the court may dismiss that defendant and assume jurisdiction over the case. *See id.* at 4-5. On August 4, 2008, Plaintiffs moved to remand this case to state court, arguing that Kirsch is in fact a proper party. *See* Doc. # 17. The question before this Court, then, is whether the fraudulent joinder doctrine compels Kirsch's dismissal. If it does, diversity jurisdiction is proper in this Court. If it does not, however, the case must be remanded for lack of jurisdiction.

## ANALYSIS

### I.   FRAUDULENT JOINDER STANDARDS

Citizenship of all properly joined parties must be considered in determining diversity jurisdiction. *See, e.g., Frontier Airlines, Inc. v. United Air Lines, Inc.*, 758 F. Supp. 1399, 1403 (D. Colo. 1989). However, "[i]f the plaintiff fails to state a cause of action against [the] resident defendant who defeats diversity, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent" and that party is disregarded for jurisdictional purposes. *See id.* at 1403-04. This is not an easy showing to make. A federal court may not "pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty." *Smoot v. Chicago, Rock Islands & Pac. R.R. Co.*, 378 F.2d 879, 882 (10th Cir. 1967). In other words, "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against the resident defendant, the federal court must find that the joinder was proper and remand the case to state court." *Frontier Airlines*, 758 F. Supp. at 1404.

As with all cases, the party asserting the existence of federal jurisdiction – in this case, HealthMarkets – bears the burden of establishing that such jurisdiction exists.

*See, e.g.*, *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001).

HealthMarkets' burden here is substantial.  *See, e.g.*, *Montano v. Allstate Indem.*,

No. 99-2225, 2000 WL 525592, at *1 (10th Cir. Apr. 14, 2000) (unpublished) (noting the

"heavy burden on the party asserting fraudulent joinder").  Although the court may look

beyond the pleadings to determine whether the joinder was fraudulent, *see Frontier*

*Airlines*, 758 F. Supp. at 1404-05, the standard for such review "is more exacting than

that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the

kind of merits determination that, absent fraudulent joinder, should be left to the state

court where the action was commenced."  *Montano*, 2000 WL 525592 at *2.  To that

end, the federal court must "resolve any doubts in favor of the Plaintiff and against the

exercise of federal jurisdiction."  *Torres v. Am. Fam. Mut. Ins. Co.*, No. 07-cv-1330,

2008 WL 762278, at *3 (D. Colo. Mar. 19, 2008).  Moreover, a plaintiff need not show

that all claims are proper; "remand is required if any of the claims against the non-

diverse defendant . . . is possibly viable."  *Montano*, 2000 WL 525592 at *2.

## II.   HEALTHMARKETS HAS NOT SHOWN THAT THE CLAIMS AGAINST KIRSCH ARE WHOLLY WITHOUT MERIT.

HealthMarkets makes two basic arguments as to why Plaintiffs claims against

Kirsch are not viable.  First, it contends that any claims are barred by the relevant

statutes of limitations.  *See* Doc. # 1 ¶¶ 11-14; Doc. # 17 at 6-11.  Second, it argues that

the substantive claims against Kirsch – for fraud and violation of the Colorado

Consumer Protection Act – are implausible as a matter of law.  *See* Doc. # 1, ¶¶ 15-19;

Doc. # 17 at 11-13.  The Court finds that, while the claims against Kirsch may be

problematic, it is not a foregone conclusion that they will fail.

A.    <u>Plaintiffs Claims Are Not Clearly Time-Barred</u>.

Plaintiffs' fraud and Consumer Protect Act claims are both subject to three-year statutes of limitations.  Colo. Rev. Stat. §§ 13-80-101(1)(c) (fraud), 6-1-115 (Consumer Protection Act).  In both cases, the three-year time period begins to run when the fraud either is actually discovered or should have been discovered with the exercise of reasonable diligence.  *See id.* §§ 13-80-108(3) (fraud); 6-1-115 (Consumer Protection Act).  Plaintiffs contend their present claims did not accrue until the September 2007 disclosure of the policy; HealthMarkets argues that Plaintiffs were or should have been on notice of those claims at a much earlier time.

In Colorado, "'[t]he critical inquiry of when an action accrues is knowledge of the facts essential to the cause of action, not knowledge of the legal theory upon which the action may be brought.'"  *Olson v. State Farm Mut. Auto. Ins. Co.*, 174 P.3d 849, 854 (Colo. App. 2007) (quoting *Winkler v. Rocky Mountain Conference*, 923 P.2d 152, 159 (Colo. App.1995)).  "Whether a particular claim is time barred presents a question of fact and may only be decided as a matter of law when 'the undisputed facts clearly show that the plaintiff had, or should have had the requisite information as of a particular date.'"  *Wagner v. Grange Ins. Ass'n*, 166 P.3d 304, 307 (Colo. App. 2007) (quoting *Sulca v. Allstate Ins. Co.*, 77 P.3d 897, 899 (Colo. App. 2003)).  In the context of a fraudulent joinder analysis, then, the issue is whether, resolving all doubts in favor of Plaintiffs, HealthMarkets has proven with complete certainty that it is undisputed that Plaintiffs had or should have had knowledge of the facts essential to its "junk" policy claims more than three years prior to the filing of the present lawsuit in 2008. HealthMarkets has not made this heightened showing.

HealthMarkets contends that Plaintiffs' "junk" policy claims "depend upon the threshold finding that they were entitled to insurance based upon Kochan's alleged representation," and that these facts were known to Plaintiffs in 2002, when they were told that they were being denied coverage. *See* Doc. # 17 at 8.  Relatedly, because Plaintiffs' current claims are grounded in the same general events that formed the basis of their earlier lawsuit filed in 2004, HealthMarkets argues that they must at least have been on notice of their claims when they filed that case. *See id.* at 9.  However, Plaintiffs' current complaint arguably rests on a different, albeit related, foundation than their initial lawsuit.  For example, Plaintiffs assert that, had they known that the HealthMarkets policy would not have given them the full coverage they were led to expect, they would have purchased insurance elsewhere and thus would have been covered at the time of the accident. *See* Doc. # 1, Ex. 1, ¶ 85.  The facts essential to this claim have to do with the terms and scope of the policy's coverage, and are therefore different from the facts essential to the claim concerning Kochan's misrepresentations, which have to do with the status of their application.  Knowledge that coverage was being denied did not obviously give Plaintiffs the knowledge that, had the coverage not been denied, the policy would not have been sufficient.

HealthMarkets' more compelling argument is that Plaintiffs were or should have been on notice of their claims in March 2004, when the defendants in the initial lawsuit filed their answer and asserted as an affirmative defense that Plaintiffs claims would be barred by the terms of the insurance policy Plaintiffs wanted issued. *See* Doc. # 17 at 9.  In other words, because the current claims involve the sale of policies that purportedly do not provide adequate coverage, HealthMarkets argues that the assertion of this affirmative defense, which indicated that the policy was not as robust as Plaintiffs

expected, should have put Plaintiffs on notice of those claims.  But simply saying that Plaintiffs' claims are barred "by the terms of the insurance contract which plaintiffs claim was or should have been in effect" does not necessarily indicate that the benefits provided by the policy would not have covered the injuries.  The policy could have "barred" the claims for a number of reasons, such as failure to pay premiums on time.  A factfinder may ultimately determine that the affirmative defense started the clock on Plaintiffs' current claims,[1] but given the posture of the case and the strictures of the fraudulent joinder doctrine, a contrary result – a finding that the claims did not accrue until the actual disclosure of the policy in September of 2007 – would not be impossible. This is particularly true given Plaintiffs' assertion that the defendants in the underlying lawsuit fraudulently concealed the policy and disclosed it only in response to Plaintiffs' threats of sanctions.  *See* Doc. # 1, Ex. 1, ¶ 59; Doc. # 14 at 3.  *See also Garrett v. Arrowhead Improvement Ass'n*, 826 P.2d 850, 853 n.7 (Colo. 1992) ("Many cases recognize that where a defendant engages in fraudulent concealment of facts pertinent to the existence of a claim, the court may toll the statute of limitations.").

Moreover, regardless of when Plaintiffs had or should have had knowledge of their claims, Plaintiffs argue that Lukas and Ethan Myers' claims were tolled until they reached age 18, which Lukas did in 2007, and Ethan will not do until 2010.  *See* Doc. # 14 at 10.  Under Colorado law, statutes of limitations are tolled for minors until they turn 18 or until a "legal representative" is appointed.  *See* Colo. Rev. Stat. §§ 13-81-101,

---

[1]   Indeed, the court in the initial action was persuaded by this argument, stating as a reason for denying Plaintiffs' motion to amend that Plaintiffs were put on notice of the defendants' theory that the policy would not have covered the injury at the time the affirmative defense was asserted.  *See* Doc. # 17 at 9.  But this conclusion, although persuasive, does not convince the Court that there is no possibility that a factfinder could reach an opposite conclusion.

103; *Elgin v. Bartlett*, 994 P.2d 411, 414 (Colo. 1999).  As the current lawsuit was filed within three years of the date Lukas reached majority, it appears that it would ordinarily be timely.  However, HealthMarkets argues that the appointment of Lukas and Ethan's mother, Emma Myers, as conservator in 2003 removed them from the protection of this tolling rule.  *See* Doc. # 17 at 10-11.  Although Colo. Rev. Stat. § 13-81-101(2) does include a conservator in the definition of "legal representative," it is not patently clear that Ms. Myers' appointment triggers the running of the limitations periods for the claims at issue here.

Plaintiffs contend that Ms. Myers was appointed a conservator only to oversee the funds Lukas and Ethan received as a result of their personal injury claims against the driver who hit them, and not for the purpose of pursuing the present claims.  *See* Doc. # 18 at 5; Doc. # 17, Exs. 3 and 4 (orders appointing Ms. Myers as conservator "of the estate and affairs of" Lukas and Ethan).  HealthMarkets cites no case suggesting that such a limited appointment is improper in Colorado.  Moreover, Plaintiffs' argument finds support in the plain language of the Colorado conservator statute, which provides that a conservator generally has the power to "[p]rosecute or defend actions, claims, or proceedings in any jurisdiction **for the protection of assets of the estate**."  Colo. Rev. Stat. §15-14-425(2)(x) (emphasis added).  It is unclear whether Ms. Myers had authority to assert any and all claims Lukas and Ethan might have had.  Thus, whether her appointment began the clock on the statutes of limitations for the current claims – which are not obviously "for the protection of assets of the estate" – is not "capable of summary determination" or "proven with complete certainty."  *Smoot*, 378 F.2d at 882.  The state court could plausibly find that these specific claims remained tolled until Lukas and Ethan reached the age of majority.

9

B.     Plaintiffs' Substantive Claims Are Not Clearly Without Merit.

HealthMarkets' argument that Plaintiffs cannot state a substantive fraud or Colorado Consumer Protection Act claims against Kirsch proceeds in two parts: (1) both claims require some sort of representation to or contact with the aggrieved party, and therefore (2) because Kirsch had no direct contact with Plaintiffs, these claims must fail. *See* Doc. # 17 at 11-13.  While the former proposition may be correct, the latter proposition does not necessarily follow. Just because Kirsch himself did not directly make the representation to Plaintiffs does not mean that the claims are barred as a matter of law.

Kirsch, who is purportedly employed or controlled by HealthMarkets, is alleged to have trained sales agents to falsely represent the benefits of the HealthMarkets policies, and consequently to have been a part of the fraudulent scheme to sell "junk" insurance policies that eventually affected Plaintiffs.  *See* Doc. # 1, Ex. 1, ¶¶ 93-95. Colorado courts have found defendants with indirect connections to the injured parties to be liable for fraud and violation of the Consumer Protection Act.  *See, e.g.*, *Hoang v. Arbess*, 80 P.3d 863, 870 (Colo. App. 2003) (finding that an individual corporate officer could have been liable, under the Consumer Protection Act, for directing his sales personnel to falsely represent the conditions of the certain homes); *Mead & Mount Constr. Co. v. Fox Metal Industries, Inc.*, 511 P.2d 509, 510 (Colo. App. 1973) (finding defendant, a sub-contractor to a sub-contractor, liable for fraud against the primary contractor even though the defendant did not deal directly with the contractor).  While there are distinctions between these cases and the present case, they are relevant in that they suggest a Colorado court could find Kirsch liable for his involvement in an

allegedly fraudulent scheme, notwithstanding his lack of direct contact with Plaintiffs. That is all that is required for the purpose of defusing a fraudulent joinder claim.[2]

## **CONCLUSION**

Given that federal courts are courts of limited jurisdiction, the fraudulent joinder doctrine presents a high bar for a defendant seeking to disregard a named party that would otherwise deprive the court of the power to hear the case.  While the claims against Kirsch may ultimately fail, and indeed may fail on the grounds urged before this Court, HealthMarkets has not shown that there is no possibility that Plaintiffs might be able to maintain those claims.

Accordingly, it is

ORDERED that Plaintiffs' Motion to Remand to State Court (Doc. # 14) is GRANTED.  This case is REMANDED to the District Court of Arapahoe County, Colorado. It is

FURTHER ORDERED that HealthMarkets' purported motion for remand and removal discovery is DENIED.  The parties submissions of documents, affidavits, and deposition transcripts from the initial lawsuit as exhibits to their briefing of the present motion, indicates that they have access to sufficient jurisdictional facts.  Thus, in the interest of avoiding further delay, the Court declines to exercise its discretion to order additional discovery.  It is

---

[2]   HealthMarkets also contends that Kirsch did not himself train Mr. Kochan and therefore cannot be liable to Plaintiffs.  *See* Doc. # 17 at 12-13.  However, Plaintiffs do not allege that Kirsch directly trained Mr. Kochan, only that he was responsible for training all agents, including Mr. Kochan.  *See, e.g.*, Doc. # 14 at 8.  The fact that Kirsch's involvement in training Mr. Kochan may have been supervisory and indirect does not change the fact that a claim against Kirsch for involvement in the allegedly fraudulent "junk" policy scheme might be viable.

FURTHER ORDERED that all other pending motions, including Defendants' Motion to Dismiss (Doc. # 24), Defendants' Motion for Sanctions (Doc. # 33), and Defendants' Motion to Strike the Affidavits of Thomas Barlow, Edward T. DeBrower, James Helton, and Eric Weiss (Doc. # 34) are DENIED as MOOT.

DATED:  May  7 , 2009

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge